Beck *v.* Cobb, Clerk of Court, *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed Feb. 4, 1939.

WHITE & HOWARD, of Nashville, for complainant.

ROY H. BEELER, Attorney-General, and DUDLEY PORTER, JR., and EDWIN F. HUNT, Assistant Attorney-General, for defendants.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

Complainant, Henry Beck, doing business under the name of the Central Contracting Company, filed his bill herein against John B. Cobb, Clerk of the County Court of Davidson County, Tennessee, to recover a privilege tax assessed against him under Item 27, section 1, article 2, of Chapter 108 of the Public Acts of 1937, and which he paid under protest.

Item 27, in the parts thereof material to this suit, is as follows:

"Each person engaged in the general contracting business in this State, constructing office buildings, public buildings, or other buildings, bridges, water works, drainage works, sewerage system, and the like, other than public roads or railroad contractors, where the aggregate contract price contracted for construction in any one year exceeds the sum of $500,000.00, per annum ..............................$200.00

* * *

"Where the aggregate contract price for contracts for any one year is less than $10,000.00, per annum ......................................$10.00

* * *

"When each person applies for the privilege license for engaging in the business as above set forth, either as the original or sub-contractor, he shall pay to the county court clerk of the county in which the application is made, the minimum amount above and shall enter into bond to be approved by the county court clerk in the sum of the maximum amount including what might be due both the county and the State as provided for one year's privilege above, conditioned for the payment of the additional amount of privilege at the termination of 12 months from the date of the application for the privilege license. Such contractor or sub-contractor shall be liable on the basis of the aggregate amount of contracts taken by him for the 12 months' period, without deduction for any part subcontracted or re-subcontracted.

"The tax is payable in such county where work is performed upon the aggregate contract price for contracts in such county.

"Each original or sub-contractor obtaining the privilege license as above set forth, shall within 15 days after the termination of the 12 months' period for which the privilege license has been issued make and file an accurate statement under oath, of the aggregate amount of contracts taken during the 12 months' period, said statement to be filed with the county court clerk of the county issuing said privilege license, and at the same time shall pay to the county court clerk the additional privilege tax, if any, to which said contractor or sub-contractor may be subject or liable under the provisions of this Act, based upon the aggregate amount of contracts taken for the 12 months' period."

Chapter 108, Public Acts 1937, became a law on March

5, 1937, when it was approved by the Governor, but by its terms did not take effect until April 1, 1937.

Complainant alleges in his bill that on March 30, 1937, (or March 20), he entered into a contract in Washington, D. C., with an agency of the United States Government for the construction of the Andrew Jackson Housing Project No. H-2102, in North Nashville, Tennessee, for a contract price in excess of $500,000, at a time when he was not a resident of the State of Tennessee and not engaged in the contracting business in the State of Tennessee; that on April 8, 1937, he applied for a privilege license as a contractor to carry on the business of contracting in this State, and paid the sum of $20 "and executed a bond for any further amount which he might owe, all as set forth in the statute." That after obtaining the license he proceeded to engage in the contracting business in this State to the extent of building the Andrew Jackson Housing Project in Nashville, but no other contracts were taken by complainant during the twelve months' period from April 8, 1937, to April 8, 1938.

It is further alleged in the bill that at the end of the twelve months' period complainant filed a report "showing just what he had done, as provided in the statute." That thereafter the State and County each assessed complainant an additional $190, or a total of $380, which he was forced to pay and which he avers was illegally exacted of him.

Defendants demurred to the bill upon the following grounds:

"I. The bill shows that during the period between April 1937 and April 1938, the complainant engaged in the general contracting business in this State to the extent of performing a contract for the construction of

the Andrew Jackson Housing Project No. H-2102, in North Nashville, Tennessee. Item 27 of the Revenue Bill imposes a tax for the privilege of engaging in the general contracting business in this State measured by the amount of contracting business done. The amount paid complainant for performing the contract for the construction of the Andrew Jackson Housing Project was therefore properly included in arriving at the measure of the privilege tax due from complainant under Item 27 of the Revenue Bill.

"II. The bill does not show that the taxes sought to be recovered were illegally collected."

The chancellor sustained the demurrer and dismissed the bill. Complainant has appealed to this court.

◼ The intent and purpose of the Legislature, as ascertained from the unambiguous language of Item 27, section 1, article 2, Chapter 108, Public Acts 1937, which is a general revenue bill, was to impose a tax on each person engaged in the general contracting business in this State, constructing office buildings, etc., as therein enumerated. Complainant was the general contractor for the construction of the Andrew Jackson Housing Project in Nashville. Thus he clearly falls within the class subject to the privilege tax imposed by Item 27.

It is insisted by complainant, however, that he took the contract for the construction of the Project above mentioned on March 20, 1937, prior to April 8, 1937, when he applied for and obtained his privilege license, and, therefore, prior to the taxable year. That he entered into no construction contract during the taxable year and hence, it is argued, he owed no tax. The position of complainant is that under Item 27, the tax is placed upon contracts "entered into" or "taken" and not upon

contracts performed. We are unable to agree that the tax is imposed on the taking of a contract of construction, or on the act of entering into such a contract. On the contrary, the tax is imposed on "Each person engaged in the general contracting business in this State, constructing office buildings," etc. And, it is provided, "The tax is payable in such county where work is performed upon the aggregate contract price for contracts in such county." If no work is performed under a construction contract, there would be no tax. To engage in this general contracting business implies more than the mere act of entering into construction contracts. To constitute such business, actual operation under the contract is essential.

It is contended by complainant that the phrases found in Item 27, "Where the aggregate contract price for contracts for any one year," etc., and "Such contractor or sub-contractor shall be liable on the basis of the aggregate amount of contracts taken by him for the 12 months' period," etc., when read together, mean the amount for which the contractor binds himself to do and not the work performed is the thing taxed.

It is our view that the contract price of the construction is merely the measure of the amount of the tax. Where the contract price contracted for construction in any one year exceeds $500,000 the privilege tax is $200. The tax is graduated according to the contract price of the construction. We are unable to see anything illegal in using such a measure to ascertain the amount of the privilege tax to be paid.

Complainant admits that the contract taken by him for the construction of the Project in question was in excess of $500,000. He complied with the Act by pay-

ing $20 and securing a privilege license and giving bond for the payment of the balance of the tax at the end of the tax year. We think complainant is liable for the balance of the privilege tax paid by him under protest and is not entitled to recover it.